In re Lee J. KRIGER and Joy L. Kriger, Debtors.

ASSOCIATES CONSUMER DISCOUNT COMPANY, Movant,

v.

Lee J. KRIGER, Joy L. Kriger and Claude C. Council, Trustee, Respondents.

Motion No. HLL–1.
Filed under LBR 9013.4 ¶ 6(a).
Bankruptcy No. 94–20477–JLC.

United States Bankruptcy Court, W.D. Pennsylvania.

June 9, 1994.

Claude C. Council, Trustee, Pittsburgh, PA.

Harry L. Lentchner, Pittsburgh, PA, for Associates Consumer Discount Co.

Arnold H. Cantor, Pittsburgh, PA, for debtors.

### MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

The matter before the Court is a motion for relief from the automatic stay. For the reasons stated below, the Debtors have 20 days to amend their exemptions. Relief from the automatic stay is denied at this time. If the Debtors are unable to raise a valid exemption, the court will reconsider the motion for relief from stay.

### I. FACTS

The facts in this case are not in dispute. On August 6, 1993, the Krigers ("Debtors") signed a Home Improvement Installment Contract ("Contract") in order to finance the purchase a carpet, padding and installation. The total amount due under the Contract was $4,251.60.[1] The Contract was a purchase money security agreement which granted to the seller a security interest in the property and services sold.[2] Financing

---

1. The total amount due under the Contract can be broken down as follows: $3,429.00 for the carpet, padding and installation, and $822.60 in finance charges (14.54% interest per annum over 36 months).

2. A purchase money security interest is a security interest that is "taken or retained by the seller of the collateral to secure all or part of its price...." 13 Pa.C.S.A. § 9107(1). A financing statement need not be filed to perfect a purchase money security interest in consumer goods. 13 Pa.C.S.A. § 9302(a)(4). Thus, a purchase money security interest in collateral other than invento-

statements were not filed because the seller/creditor regarded the property as consumer goods. In addition, the Contract contained the following language which required the Debtors to agree that the property and services sold were to remain "personal property":

> SECURITY: I give you a security interest under the Uniform Commercial Code in the property listed above to assure that I keep the promises I have made in this contract. I agree the property shall remain personal property and never become real property ...

(Motion for Relief, Exh. "A").

In accordance with the Contract, the carpeting and padding was delivered to the Debtors home where it was installed by cutting to size and nailed to the floor by the seller.

The Contract was subsequently assigned to the movant, Associates Consumer Discount Company ("Associates"). On February 18, 1994, the Debtors filed for protection under Chapter 7 of the Bankruptcy Code, having made no payments on the Contract. On May 2, 1994, Associates filed the subject motion for modification of its stay pursuant to 11 U.S.C. § 362(d)(1) [3] in order to pursue its state remedies in the enforcement of its security interest.

## II. DISCUSSION

Before the court can determine whether Associates is entitled to relief under 11 U.S.C. § 362(d)(1), the court must first address the issue of whether Associates has a secured or unsecured interest in the carpet, padding and installation. Moreover, the court must decide whether the subject carpeting and padding are to be classified under the Pennsylvania's Commercial Code as personalty or as fixtures. See 13 Pa.C.S.A. § 9313(a). If the carpet and padding are deemed to be fixtures, Associates' security interest is not perfected because Associates did not file a financing statement in accordance with Pennsylvania state law. 13 Pa. C.S.A. § 9313(a). Consequently, Associate's security interest cannot defeat the trustee in bankruptcy. 11 U.S.C. § 544(a).

In its motion, Associates asserts that the carpet and padding are personalty and not fixtures. First, Associates maintains that the carpeting and padding can be removed without damaging the Debtors' property. Second, Associates believes that even if the court finds the carpeting and padding to be fixtures, Pennsylvania law permits the property to remain personal property by agreement between the parties. In support of this argument, Associates refers to the Contract the Debtors signed agreeing that the carpeting and padding would remain personalty and never become real property.

The Debtors argue that although the carpeting and padding was personalty when purchased, at the time the carpeting and padding was cut and nailed to the floor and installed, the carpeting and padding in fact became fixtures under Pennsylvania law because the parties had a clear understanding that the carpeting would be *installed* and, therefore, affixed to the real estate. The Debtors assert that because the carpeting and padding are fixtures under Pennsylvania law, Associates was required to file its installment contract at the Office of the Recorder of Deeds in order to perfect its security interest and put the mortgage holder on notice. 13 Pa.C.S.A. § 9313(a). The Debtors further argue that removing the carpeting would damage the existing floors, diminish the value of the real property, and destroy the installation value which was also financed.

The Pennsylvania Commercial Code defines "fixtures" as goods which become so related to particular real estate that an interest in them arises under real estate law. 13 Pa.C.S.A. § 9313(a). In order to

---

ry can be perfected simply by the debtor taking possession. 13 Pa.C.S.A. § 9312(d).

**3.** 11 U.S.C. § 362(d)(1) states as follows:
> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; ...

perfect a security interest in a fixture, Pennsylvania law requires that a party file a financing statement in the office where a mortgage on the real estate would be filed or recorded. 13 Pa.C.S.A. § 9313(a). In the case of consumer goods, the proper place to file is with the Recorder of Deeds of the county in which the fixture is located. 13 Pa.C.S.A. § 9401(a)(2).

Under Pennsylvania law, goods used in connection with real estate generally falls into three categories:

(1) Those which are manifestly furniture, as distinguished from improvements, and which are not peculiarly fitted to the property with which they are used; these always remain personalty.

(2) Those which are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves; these are realty, even when the express intention is that they should be considered personalty.

(3) Those which, although physically connected with real estate, are so affixed as to be removable, without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending of the intention of the parties at the time of annexation.

See *In re International Building Components,* 159 B.R. 173, 178 (Bkrtcy.W.D.Pa. 1986) (quoting *Clayton v. Leinhard,* 312 Pa. 433, 436–37, 167 A. 321, 322 (1933)).

■ The carpeting and padding at issue does not fit into the first category because the carpeting and padding were "peculiarly fitted" to the Debtors' property. Wall-to-wall carpeting, by its very nature, is cut specifically to fit the size and shape of the room in which it is installed. This case was such an installation.

Examining the general classification of the second and third categories, the court believes the carpeting and padding can be considered realty for the purposes of the Pa. U.C.C. Although the parties contracted to keep the carpet as "personalty," the court

believes that because the carpet and padding are nailed to the floor, their removal will cause damage to the property and to the carpeting, padding, and to the installation cost and value. The court is convinced that this would result in a material injury and would cause a reduction in the value of the real estate. Furthermore, under the Contract, part of what the Debtors purchased was the installation services rendered to install the carpet and padding. Considering the oxymoron of removing the "installation," certainly the value of this installation would be destroyed.

■ Finally, in regard to the third category, classification of property as a fixture or personalty for U.C.C. purposes depends upon the intention of the parties at the time of its annexation. By intention, however, the court does not mean the collective state of mind of the parties, but rather the intention manifested by the documents executed by the parties, and the parties' actions with respect to one another. See *In re Farrier,* 61 B.R. 950, 954 (Bkrtcy.W.D.Pa.1986).

The Debtors signed a contract requiring the carpet and padding to remain personal property. Associates argues that under Pennsylvania law, parties can contract to keep property "personalty". The court believes that the contract language is some evidence of intent, but it is not definitive. The language in question regarding Associate's "security interest" was included in boilerplate amidst numerous other covenants and does not appear to have been bargained for. As is typically the case with boilerplate, the print was very small. Furthermore, the language of the clause granting the security interest is vague. The clause refers only to personal property and to real estate. However, it does not explain the significance of the distinction between personal and real property and how this distinction affects the seller's security interest. Moreover, the contract form itself is confusing. In order to determine what security interest has been granted, the clause refers to equally vague and misleading language on another page of the contract.[4]

---

4. The contract language states as follows:
SECURITY: I give you a security interest under the Uniform Commercial Code in the property listed above to assure that I keep the promises I have made in this contract. I agree the property shall remain personal property

The court believes that the Debtors did intend to grant the seller some kind of security interest in the carpeting and padding until the Debtors paid for it. However, in light of the fact that both the contract form and its language were drafted by the seller, its lack of precision should be the burden on the seller. The Contract to keep the carpeting and padding as personalty is secret because Associates relied on it as a consumer good. Unrecorded instruments should not bind third parties. Therefore, the Contract is only some evidence that the parties intended for the carpeting and padding to remain personalty. The court must also consider additional evidence, such as the partys' actual actions.

■ There is no bright-line test for determining the intent of the parties with respect to their actions. The finder of fact must, at a minimum, consider and weigh factors such as: 1) the nature of the personalty involved; 2) the status of the possessor of the personalty in respect to the realty; 3) the manner of annexation of the personalty; and 4) the use to which the personalty is put when making its determination. See *In re International Building Components,* 159 B.R. at 178 (citing *Canon–McMillan School District v. Bioni,* 110 Pa.Cmwlth. 584, 596, 533 A.2d 179, 184 (1987), remanded on other grounds, 521 Pa. 299, 555 A.2d 901 (1989)).

Although carpeting and padding are generally categorized as personalty, when cut to the size and shape of a room and then nailed down to the floor, in fact carpeting becomes part of the real estate. Carpeting that is custom fitted to a room is generally not removed when real estate is sold.

The Debtors' status as owners rather than lessees of the real property further strengthens the notion that the Debtors intended for the carpet and padding to be fixtures rather than personalty. It is highly improbable that a lessee would affix carpeting that it had purchased to someone else's property. Had the Debtors been lessees of the property, the most logical inference would be that the carpeting and padding they purchased was intended to be personalty that they would remove upon relocation. The Debtors' status as owners indicates that they intended for the carpeting to remain in the home when it was affixed to the real estate.

The manner in which the carpet and padding were attached to the floor also compels the conclusion that they were intended to become fixtures of the realty. The carpeting and padding were nailed to the floor. Moreover, both parties knew that installation of the carpet and padding required that it be affixed to the real estate.

Finally, the Debtors purchased the carpet and padding in order to improve the value of their home. The Debtors used the carpeting to cover the floor of their home which was made of particle board. Therefore, the carpeting was presumably to be used not only for comfort and decoration, but also to insulate the house.

■ Therefore, despite the express Contact to the contrary, the parties, by their actual actions, intended the carpeting and padding to become a fixture rather than personalty. Even though the creditor contracted with the Debtors to keep the property as personalty, the parties and especially the trustee in bankruptcy are not bound by such an agreement when a reasonable observation would regard the property as a fixture. Associates failed to file a financing statement with the Office of the Recorder of Deeds. On the facts of this case, Associates' failure to file is fatal to its security interest; its security interest is unperfected. 13 Pa. C.S.A. § 9313(a).

The court must also consider Associate's interest as it would relate to the Chapter 7 trustee's interest. Once bankruptcy ensues, the Bankruptcy Code at § 544(a) provides that the trustee has a senior priority com-

and never become real property. If the box on the reverse side concerning security in real estate is checked, I give you a Real Estate Mortgage dated the same as this contract on the real estate described.

The reverse side states:
Security: _X_ You are giving a security interest in the goods or property being purchased.
____ You are giving a security interest in your real estate located at: _____

pared to unperfected creditors. The trustee would not be able to defeat the perfected interest of the mortgage holder. However, the trustee would be able to defeat the unperfected and unrecorded mortgage granted to Associates. The trustee would not be bound by an agreement between the parties to classify the subject property as personalty and the failure to record if in fact the property had become a fixture. In general, purchase money consumer goods do not require recordation. However, where such goods can be reasonably viewed by a bona fide purchaser and considered as fixtures, a recording is required.

Section 551 preserves for the benefit of the estate any transfer avoided under § 544. Therefore, the carpeting and padding has become property of the estate and the Debtors may exempt this property as part of their real estate exemption under 11 U.S.C. § 522.

The Debtors have 20 days to amend their exemptions.